IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| FRANKLIN V. ANDERSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CIV. ACT. NO. 1:21-cv-388-TFM-B |
| | ) | |
| CITY OF PRICHARD, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is *Defendants' Motion for Summary Judgment and Brief Memorandum in Support* (Doc. 62, filed 5/26/23) along with their evidentiary materials in support (Doc. 61).  Plaintiff timely filed his response in opposition (Doc. 65, filed 6/16/23) along with his evidentiary materials (Doc. 64).  Defendants timely filed their reply (Doc. 66, filed 6/22/23).  The motion has been fully briefed and is ripe for review.  Having considered the motion, response, reply, and relevant law, the Court finds the motion for summary judgment (Doc. 62) is due to be **GRANTED**.

### I.    PARTIES, JURISDICTION, AND VENUE

Plaintiff Franklin V. Anderson ("Plaintiff" or "Anderson") asserts claims against Defendant City of Prichard ("the City"), Chief of Police for the City of Prichard Walter Knight ("Chief Knight"), City of Prichard Municipal Court Clerk Donna Hobson ("Hobson"), and Prichard Police Officer Jonathan C. Anthony ("Officer Anthony") – collectively referenced as Defendants.[1]

---

[1] As a general matter, fictitious party pleading is not permitted in federal court.  *See, e.g.*, *New v. Sports & Recreation, Inc.*, 114 F.3d 1092, 1094 n.1 (11th Cir. 1997); *Richardson v. Johnson*, 598 F.3d 734, 738 (11th Cir. 2010); *see also Dean v. Barber*, 951 F.2d 1210, 1215-16 (11th Cir. 1992)

The District Court has subject matter jurisdiction over the claims in this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff asserts claims pursuant to 42 U.S.C. § 1983. The Court has jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367 (supplemental jurisdiction).

The parties do not contest personal jurisdiction or venue, and there are adequate allegations to support both. Specifically, the Court has personal jurisdiction over the claims in this action because the events that gave rise to this action arose within this district and both Plaintiff and Defendants are located in this district. *See Consol. Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1291-92 (11th Cir. 2000) ("Specific jurisdiction arises out of a party's activities in the forum that are related to the cause of action alleged in the complaint. . . . General personal jurisdiction, on the other hand, arises from a defendant's contacts with the forum that are unrelated to the cause of action being litigated. The due process requirements for general personal jurisdiction are more stringent than for specific personal jurisdiction, and require a showing of continuous and systematic general business contacts between the defendant and the forum state."). Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events that gave rise to Plaintiff's claims occurred in this judicial district.

## II.    BACKGROUND

### A.    Factual Background[2]

---

(recognizing limited exception to the general rule). In this case, Plaintiff did not timely amend his complaint to name the three fictitious John Doe officer defendants. The Court issued a comprehensive opinion explaining its decision when denying the untimely motion to amend. *See* Doc. 60. Therefore, the fictitious defendants are stricken.

[2] At the summary judgment stage, even in cases of excessive force, the facts are "what a reasonable jury could find from the evidence viewed in the light most favorable to the non-moving party." *Cantu v. City of Dothan*, 974 F.3d 1217, 1222 (11th Cir. 2020) (quoting *Scott v. United States*, 825 F.3d 1275, 1278 (11th Cir. 2016)). "[W]here there are varying accounts of what happened, the proper standard requires us to adopt the account most favorable to the non-movant." *Id.* (quoting

On September 19, 2019 around 8:30 a.m., Plaintiff was driving on Bear Fork Road in Prichard, Alabama. Plaintiff started recording from his phone while driving. The entire exchange on video is approximately 3 minutes and both parties submit the video as part of their evidence for the summary judgment briefing. *See* Doc. 61, Exhibit C; Doc. 64, Exhibit B. In the beginning of the video, Plaintiff is driving slowly down the road and pulls off to the side when Officer Anthony pulls alongside him and asks what is wrong. Plaintiff immediately begins shouting out the window to officers about writing the man a ticket for tailgating. The officer responds that Plaintiff's driving is the problem and Plaintiff immediately yells back that he is not. The officers initially tell him to stay in the car. Plaintiff starts yelling "if you have this in your neck, you don't want somebody riding on your bumper" to which officers responded that had nothing to do with the way Plaintiff was driving and Plaintiff continues yelling that it has everything to do with it. They tell him to calm down and then tell him to get out of the vehicle. The officers still discuss that he is going slowly and then tell Plaintiff to turn around and begin handcuffing him. They tell Plaintiff to stop resisting and pulling away though he continues to move around. Plaintiff continues to shout and yells about his surgically repaired neck. The exchange continues when the officers ask him about a driver's license and carry permit. Plaintiff yells that he has both and that he is a lawyer. The officer responds that he knows who he is as he has dealt with him before when he got rear ended. The officers tell him to stay turned around and Plaintiff periodically tries to turn around to see the

---

*Smith v. LePage*, 834 F.3d 1285, 1296 (11th Cir. 2016)). Therefore, the recitation of facts here are those construed in favor of the Plaintiff. "The 'facts' at the summary judgment stage are not necessarily the true, historical facts; they may not be what a jury at trial would, or will, determine to be the facts." *Id*. However, it is important to note that a large portion of the initial events were captured on video which is included in the record. Courts should "view[] the facts in the light depicted by the videotape." *Scott v. Harris*, 550 U.S. 372, 378 (2007); *Richmond v. Badia*, 47 F.4th 1172, 1179 (11th Cir. 2022) (holding that "we accept video evidence over the nonmoving party's account when the former obviously contradicts the latter")

officers.  The officers tell him they watched him driving and he was impeding traffic.  They then put him inside the back of the police car.  The officers then have a quick conversation with the passenger of the vehicle, ask him whether he is ok, and whether he can drive.  The passenger responds that he is fine, ok to drive, and had to get some dental work done.  The officer asks the passenger why Plaintiff was driving so slowly, and the passenger responds that Plaintiff had surgery in his neck.  The video then cuts off after the officer responds he knew about Plaintiff's prior car accident where he was rear ended.  *See id*.

Following the events on the video, the officers charged Plaintiff with disorderly conduct and resisting arrest.  *See* Doc. 61-4 (Alabama Uniform Incident/Offense Report).  They also seized his gun and 2 magazines.  *Id*.  Plaintiff pled not guilty to the charges and after multiple settings with the Municipal Court of Prichard, Alabama, eventually on September 2, 2020, the charges were dismissed by the municipal court judge without a trial.  *See* Doc. 61-6.  Plaintiff never sought for the arrest to be expunged.  *See* Doc. 62-2 at 23-24, PageID 336-337.

On November 4, 2020, Plaintiff submitted a "Weapon Return Request" to the City of Prichard Municipal Court.  *See* Doc. 61-8.  A hearing was set and held on December 3, 2020 and the weapon was ordered returned to him by the municipal judge.  *Id*.

On August 12, 2021, Plaintiff submitted a "Request for Record Search and/or Copies of Court Records."  *See* Doc. 61-7.  Plaintiff never submitted the required fees though he states he was never asked about it.  *See* Doc. 61-2 at 27, PageID 340.  He also never followed up on the request, though he said "I didn't see any point."  *Id*. at 29, PageID 342.

**B.    Procedural Background**

On September 8, 2021, Plaintiff filed his original complaint asserting a combination of federal and state law claims against the Defendants along with the City of Prichard Police

Department. *See generally* Doc. 1. On October 4, 2021, Officer Anthony filed a motion to dismiss for insufficient process. Doc. 11. On October 8, 2021, the remaining Defendants (including the police department) filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). Doc. 13. On April 13, 2022, the Magistrate Judge entered two Reports and Recommendations which addressed the pending motions to dismiss. *See* Docs. 19, 20. In response, Plaintiff effectuated proper service on Officer Anthony and attempted to amend his complaint. *See* Docs. 22, 23. No objections were filed. On April 28, 2022, the Court addressed construed the attempt to amend as a motion and denied Officer Anthony's motion to dismiss for insufficient service of process. *See* Doc. 25.

Officer Anthony then appeared and filed a motion to join the previously filed motion to dismiss. *See* Doc. 26. However, the Court declined to permit joining the motion to dismiss because it was already fully submitted and addressed in the Report and Recommendation. *See* Doc. 27. However, as no objections were filed and to clean up the docket sheet, the Court adopted the Report and Recommendation and granted in part and denied in part the motion to dismiss. *Id*. As a result, the City of Prichard Police Department was dismissed with prejudice, but the remainder of the motion to dismiss was denied and leave to amend was granted. *Id*.

On June 3, 2022, Plaintiff filed his First Amended Complaint which alleged seven causes of action:

- Count 1 (against Officer Anthony and Unknown Officers A, B, C): Fourth Amendment and Fourteenth Amendment violations of false arrest;

- Count 2 (against Officer Anthony, Unknown Officers A, B, C, the City, and Chief Knight): Second, Fourth, Fifth, and Fourteenth Amendment violations of unlawful search and seizure of both Plaintiff and his property;

- Count 3 (against Officer Anthony and Unknown Officers A, B, C): Fourth Amendment

and Fourteenth Amendment violations of use of excessive force;

- Count 4 (against Hobson, Chief Knight, and the City): Fifth and Sixth Amendment violations of right to due process and right to a fair trial;

- Count 5 (against Officer Anthony, Chief Knight, the City, and Unknown Officers A, B, C): Negligence;

- Count 6 (against Officer Anthony and Unknown Officers A, B, C): Assault;

- Count 7 (against Officer Anthony and Unknown Officers A, B, C): Tort of Outrage.[3]

*Id*. at 5-13.  Plaintiff seeks $2 million dollars in general damages, $1 million dollars in special damages, $2 million in punitive damages, declaratory judgment, costs, and attorneys' fees.  *Id*. at 12-13.

On April 28, 2023, Plaintiff filed another motion to amend wherein he sought to amend his complaint to include the identities of the three unknown Prichard police officers.  Doc. 54. Defendants opposed the motion to amend arguing that it was untimely.  Doc. 55.  Plaintiff filed a reply and Defendants filed a surreply.  Docs. 58, 59.  After careful consideration, the Court denied the motion to amend noting that it was well after the deadline and that Plaintiff had been on notice since the beginning of the case that he would need the identities of the officers at issue.  Further, he failed to timely utilize the discovery process to discover the identities.  The Court found that the Defendants would be prejudiced by the delays that would occur if the Plaintiff were permitted to amend at such a late stage.  *See* Doc. 60.  As further discussed in footnote 1 of this opinion, the fictious defendants are stricken.

---

[3] Plaintiff inadvertently doubled "Sixth Cause of Action" when referencing the tort of outrage. The prior cause of action (Assault) was already labelled the Sixth.  *Compare* Doc. 29 at 11 ¶¶ 62-64 (header) *with id*. at 12 ¶¶ 65-67 (header).  The document is clear these are separate causes of action, so the Court will revise the label for the tort of outrage as Count 7.

On May 26, 2023, Defendants filed their motion for summary judgment and evidentiary support.  *See* Docs. 61, 62.  Officer Anthony asserts he is entitled to qualified immunity.  Chief Knight asserts he did not participate in the traffic stop or arrest and cannot be held liable on the basis of respondeat superior or vicarious liability.  The City asserts that Plaintiff cannot establish an official policy or custom caused his alleged injuries and that the City had a procedure in place for Plaintiff to recover his firearm.  Defendants also assert the due process claims fail as a matter of law and that alternatively, Hobson and Chief Knight are entitled to judicial immunity, quasi-judicial immunity, and/or qualified immunity.  As for the state law claims, Defendants assert Officer Anthony is entitled to state agent and discretionary function immunity and the negligence claims against Chief Knight fail as a matter of law.  Then, as a result, the City would also be immune.  Doc. 62.

Plaintiff filed his response in opposition to the motion for summary judgment along with his evidentiary support.  Docs. 64, 65.  Plaintiff argues that it should be "up to the trier of facts to determine if the actions of Anthony, his complete disregard for the judicial system, and his failure to appear at court is tantamount to false arrest and . . . if the actions of Anthony were within the policies and procedures of the Prichard Police Department."  Doc. 65 at 5-6.  Plaintiff argues that Anthony admits he has not read the policies and seems to imply that defeats any assertion of qualified immunity.  *Id*. at 6-7.  Plaintiff further argues that a jury must determine whether Anthony used excessive force because he yanked Plaintiff out of the vehicle with great force, thereby exacerbating Plaintiff's neck injury.  *Id*. at 7.  He further argues that Anthony would not be entitled to state agent immunity on the negligence, assault, and outrage claims because he acted willfully, maliciously, in bad faith, and beyond his authority in illegally stopping the vehicle.  *Id*.  Plaintiff further argues that Knight did not offer any evidence that would indicate he did what a reasonable

person would do to ensure his officers read and understood the policy and procedure book, would show up for court, and follow the code of ethics and conduct. *Id*. at 7-8. This also would apply to the City. *Id*. Plaintiff does not address the summary judgment arguments raised by Hobson. *See generally id.*

Defendants then filed their reply. Doc. 66. In summary, Defendants argue that Plaintiff fails in his burden to dispute the application of qualified immunity.

The motion for summary judgment is ripe for review and the Court finds that oral argument is unnecessary.

### III.   STANDARD OF REVIEW

A party in a lawsuit may move a court to enter summary judgment before trial. FED. R. CIV. P. 56(a), (b). Summary judgment is appropriate when the moving party establishes there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *see also Greenberg v. BellSouth Telecomms., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) ("Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law.'"). "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Ritchey v. S. Nuclear Operating Co.,* 423 F. App'x 955 (11th Cir. 2011) (quoting *Anderson*, 477 U.S. at 248).[4] At the summary judgment juncture, the court does not "weigh the evidence and determine the truth of the matter," but solely

---

[4] In this Circuit, "[u]npublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2 (effective Dec. 1, 2014); *see also Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 n.1 (11th Cir. 2015) (per curiam) ("Cases printed in the Federal Appendix are cited as persuasive authority.").

"determine[s] whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. Only disputes about the material facts will preclude the granting of summary judgment. *Id*.

The movant bears the initial burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A party must support its assertion that there is no genuine issue of material fact by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1). The admissibility of evidence is subject to the same standards and rules that govern admissibility of evidence at trial. *Clemons v. Dougherty County*, 684 F.2d 1365, 1369 n. 5 (11th Cir. 1982) (citing *Pan-Islamic Trade Corp. v. Exxon Corp.*, 632 F.2d 539, 556 (5th Cir. 1980)).

Once the movant meets its burden under Fed. R. Civ. P. 56, the non-movant must go beyond the pleadings and designate specific facts showing there is a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593-94 (11th Cir. 1995) (internal quotations omitted) (citing *Celotex*, 477 U.S. at 324). "A genuine issue of material fact exists when 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Moore ex rel. Moore v. Reese*, 637 F.3d 1220, 1232 (11th Cir. 2011) (quoting *Anderson*, 477 U.S. at 248). The court must view the facts and draw all reasonable inferences in favor of the non-moving party. *Id*. (citing *Rosario v. Am. Corrective Counseling Servs., Inc.*, 506 F.3d 1039, 1043 (11th Cir. 2007)); *Greenberg*, 498 F.3d at 1265 ("We view the evidence and all factual inferences therefrom in the light most favorable to the party opposing the motion."). However, to avoid summary judgment, the

nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586 (citations omitted). Conclusory assertions, unsupported by specific facts, that are presented in affidavits opposing the motion for summary judgment are likewise insufficient to defeat a proper motion for summary judgment. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). "Speculation does not create a *genuine* issue of fact." *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005) (citation omitted). If the evidence is merely colorable or is not significantly probative, summary judgment may be granted. *See Anderson*, 477 U.S. at 249-50 (emphasis in original) (citations omitted). In short, summary judgment is proper after adequate time for discovery and upon motion against a party who fails to make a showing that is sufficient to establish the existence of an element that is essential to that party's case. *Celotex*, 477 U.S. at 322.

Finally, Fed. R. Civ. P. 56(e) also provides that "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it; or (4) issue any other appropriate order." FED. R. CIV. P. 56(e).

## IV.    DISCUSSION AND ANALYSIS

### A.    Claims against Officer Anthony

Plaintiff asserts six claims against Officer Anthony. The federal claims brought under 42 U.S.C. § 1983 are as follows: Count 1 - Fourth Amendment and Fourteenth Amendment violations of false arrest; Count 2 - Second, Fourth, Fifth, and Fourteenth Amendment violations of unlawful search and seizure of both Plaintiff and his property; and Count 3 - Fourth Amendment and

Fourteenth Amendment violations of use of excessive force.  The state law claims brought pursuant to Alabama state law are as follows: Count 5 - negligence; Count 6 - assault; Count 7 - tort of outrage.[5]

Officer Anthony asserts qualified immunity as to the federal claims and state agent immunity for the state law claims.

### i.    Federal Claims - Qualified Immunity

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  To be protected by qualified immunity, the government official must first demonstrate that he was acting within the scope of his discretionary authority when the alleged wrongful acts occurred.  *Garcia v. Casey*, 75 F.4th 1176, 1185 (11th Cir. 2023) (citing *Melton v. Abston*, 841 F.3d 1207, 1221 (11th Cir. 2016)); *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1281 (11th Cir. 1998).  "Once it has been determined that an official was acting within the scope of his discretionary authority, the burden shifts to the plaintiff to establish that qualified immunity is inappropriate."  *Garcia*, 75 F.4th at 1185 (quotation omitted).

Courts utilize a two-part framework to evaluate qualified immunity claims.  *Castle v. Appalachian Tech. College*, 631 F.3d 1194, 1197 (11th Cir. 2011).  The first element is whether the plaintiff's allegations, if true, establish a constitutional violation.  *Pearson*, 555 U.S. at 232 (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).  The second element is whether the

---

[5] *Supra* n. 3.  The tort of outrage was re-labeled as Count 7 due to the duplication of Count 6 in the complaint.

constitutional right at issue was "clearly established" at the time of the defendant's alleged misconduct.  *Id.* at 232.  "Clearly established means that, at the time of the officer's conduct, the law was sufficiently clear that every reasonable official would understand that what he is doing is unlawful."  *Garcia*, 75 F.4th at 1185 (quoting *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018)).  "In other words, existing law must have placed the constitutionality of the officer's conduct 'beyond debate.'"  *Wesby*, 583 U.S. at 63 (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735, (2011)).  This demanding standard protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U. S. 335, 341 (1986).  Regarding the second prong of the analysis, courts "recognize three sources of law that would put a government official on notice of statutory or constitutional rights: specific statutory or constitutional provisions; principles of law enunciated in relevant decisions; and factually similar cases already decided by state and federal courts in the relevant jurisdiction."  *Goebert v. Lee Cnty.*, 510 F.3d 1312, 1330 (11th Cir. 2007).  Courts will also look beyond caselaw to whether the case at hand is one of "obvious clarity" – i.e., where the officer's conduct "lies so obviously at the very core of what the Fourth Amendment prohibits that the unlawfulness of the conduct was readily apparent to [the official], notwithstanding the lack of fact-specific case law" on point.  *Oliver v. Fiorino*, 586 F.3d 898, 907 (11th Cir. 2009) (quoting *Vinyard v. Wilson*, 311 F.3d 1340, 1355 (11th Cir. 2002)).  In such situations where it is so obvious, courts have repeatedly held that the constitutional violation is clearly established even though there is no decision in a "materially similar preexisting case." *Cantu*, 974 F.3d at 1235 (citations and internal quotations omitted).  That said, "the clearly established law standard is a demanding one."  *Id.* (citing *Wesby*, 583 U.S. at 63; *City & Cty. of San Francisco. v. Sheehan*, 575 U.S. 600 (2015)).

The first inquiry may be a mixed question of law or fact, but the second inquiry is purely a

question of law.  *Hall v. Flournoy*, 975 F.3d 1269, 1275 (11th Cir. 2020).  "Both elements of this test must be present for an official to lose qualified immunity, and this two-pronged analysis may be done in whatever order is deemed most appropriate for the case."  *Brown v. City of Huntsville*, 608 F.3d 724, 734 (11th Cir. 2010) (citing *Pearson*).  If a plaintiff fails to establish either one, then the defendant is entitled to qualified immunity.

Having laid out the framework for analysis, the Court will turn to the situation in this case. Neither party disputes that Officer Anthony was acting in the scope of his discretionary authority. Therefore, the burden shifts to the Plaintiff to establish the two-part framework.

Plaintiff asserts that Officer Anthony violated his Fourth, Fifth, Fourteenth Amendment rights for violations of false arrest, unlawful search and seizure, and excessive force.  The Court will address each in turn.  However, the Court reiterates that the facts must be viewed as "what a reasonable jury could find from the evidence viewed in the light most favorable to the non-moving party."  *Cantu*, 974 F.3d at 1222.  Further, "where there are 'varying accounts of what happened,' the proper standard requires [the Court] to adopt the account most favorable to the non-movants." *Smith v. LePage*, 834 F.3d 1285, 1296 (11th Cir. 2016) (quoting *Perez v. Suszczynski*, 809 F.3d 1213, 1217 (11th Cir. 2016)).  "However, 'when opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.'"  *Varnadore v. Merritt*, 778 F. App'x 808, 812 (11th Cir. 2019) (quoting *Scott*, 550 U.S. at 380).  This is particularly true when a video captures the events in question.  When there are no allegations or indications that video evidence has been doctored, or that the video shows something different than what actually happened, the Supreme Court indicates courts should "view[] the facts in the light depicted by the videotape."  *Scott*, 550 U.S. at 378; *see also Badia*, 47

F.4th at 1179 (holding that "we accept video evidence over the nonmoving party's account when the former obviously contradicts the latter").  Yet, where the video does not answer all the questions or resolve all the details of the encounter, the Court must view the evidence in the light most favorable to the non-moving party. *Johnson v. City of Miami Beach*, 18 F.4th 1267, 1269 (11th Cir. 2021).

### (a) False Arrest (Fourth/Fourteenth Amendments) – Count 1

An officer violates a person's Fourth Amendment right against unreasonable seizures if the officer arrests that person without probable cause to make the arrest.  *Garcia*, 75 F.4th at 1186 (citing *Skop v. City of Atlanta*, 485 F.3d 1130, 1137 (11th Cir. 2007).  Therefore, to succeed on a false arrest claim, a plaintiff must establish two elements: (1) a lack of probable cause and (2) an arrest. "An arrest—the quintessential seizure of a person—occurs when the government applies physical force to seize a person or asserts lawful authority to which the subject accedes." *Badia*, 47 F.4th at 1180 (citing *California v. Hodari D.*, 499 U.S. 621, 624, 626-27 (1991)).

There does not appear to be a dispute that an arrest occurred, therefore the Court looks to the probable cause element.  When the government has probable cause to arrest someone, a false arrest claim necessarily fails. *Crocker v. Beatty*, 995 F.3d 1232, 1245 (11th Cir. 2021).  "[T]he correct legal standard to evaluate whether an officer had probable cause to seize a suspect is to ask whether a reasonable officer could conclude that there was a substantial chance of criminal activity." *Washington v. Durand*, 25 F.4th 891, 902 (11th Cir. 2022) (quotation and internal modifications omitted).  "Although 'an arrest made without probable cause violates the Fourth Amendment,' an officer is entitled to qualified immunity if he has 'arguable probable cause.'" *Badia*, 47 F.4th at 1181 (quoting *Redd v. City of Enterprise*, 140 F.3d 1378, 1382 (11th Cir. 1998));

*see also Garcia*, 75 F.4th at 1186 (also discussing that an officer need not have actual probable cause, but only arguable probable cause).

> An officer has arguable probable cause if "a reasonable officer, looking at the entire legal landscape at the time of the arrests, could have interpreted the law as permitting the arrests." *Wesby*, 138 S. Ct. at 593. An officer lacks arguable probable cause only if "the state of the law on the date of the alleged misconduct makes it obvious that the [officer's] acts violated the plaintiff's rights in the specific set of circumstances at issue." *Washington*, 25 F.4th at 903 (quotation omitted). Accordingly, "the dispositive question is whether it was already clearly established, as a matter of law, that at the time of Plaintiff's arrest, an objective officer could not have concluded reasonably that probable cause existed to arrest Plaintiff under the particular circumstances Defendants confronted." *Gates v. Khokhar*, 884 F.3d 1290, 1303 (11th Cir. 2018) (emphasis omitted).

*Garcia*, 75 F.4th at 1186.

Having reviewed the video, the Court finds that the officers (including Officer Anthony) had probable cause, or certainly arguable probable cause, to arrest Anderson. The beginning of the video shows Anderson driving very slowly and pulling off to the side when the officer pulled up alongside him. Immediately Anderson begins screaming out the window at the officers about the person behind him tailgating. Anderson continues to yell at the officers when they disagree with him and indicate his slow driving was the problem. The entire sequence of events occurred in barely two minutes and while it may have escalated quickly to arrest, the Court cannot find that the officers lacked a reasonable basis to initiate the detention and arrest. Specifically, the Court finds probable cause for an arrest for disorderly conduct.[6]

Therefore, based on the above, qualified immunity applies on the false arrest claim.

---

[6] The Court need not ultimately determine whether Anderson was driving unreasonably slowly and impeding traffic. The video does appear that Plaintiff is driving very slowly down the road. But the video starts at the point when Anderson is pulling to the side of the road for the officer to pull up alongside him. Moreover, the officers do not have to establish probable cause under every possible theory of arrest. In the case here, disorderly conduct is satisfied on its own.

### (b) Unlawful Search and Seizure (Second/Fourth/Fifth/Fourteenth Amendments) – Count 2

Plaintiff claims Officer Anthony violated his Second, Fourth, Fifth, and Fourteenth Amendment rights when the officers illegally searched and seized his handgun and ammunition with no probable cause until it was returned a year and half later by judicial order.

Generally, officers may conduct a warrantless search of a vehicle only when one of the following "exceptions" to the warrant requirement exists: (1) the incident-to-arrest exception; (2) the automobile exception; or (3) the "inventory" exception. *See U.S. v. Alston*, 598 F. App'x 730, 733 (11th Cir. 2015). The applicable exception here is the incident-to-arrest exception.

When law enforcement officers arrest a suspect, they may search for weapons and evidence in "the grab area within the suspect's immediate reach." *United States v. Bennett*, 555 F.3d 962, 966 (11th Cir. 2009). A search limited to the suspect's grab area "is always allowed" incident to a lawful arrest, even if the officers have no search warrant and no reason to believe there is evidence or a weapon in the area. *United States v. Standridge*, 810 F.2d 1034, 1037 (11th Cir. 1987).

The Court finds that the search and seizure of Plaintiff's handgun and the magazines was an appropriate search incident to arrest and does not violate the Second, Fourth, Fifth or Fourteenth Amendments. In fact, once Plaintiff's case was dismissed, he applied for its return which was set for a hearing and granted. Therefore, qualified immunity applies.

### (c) Excessive Force (Fourth/Fourteenth Amendments) – Count 3

"Unlike a false arrest claim, a genuine excessive force claim is not resolved by the existence of probable cause. Even when an officer has probable cause for an arrest, 'the manner in which a search or seizure is conducted' must nonetheless comply with the Fourth Amendment." *Badia*, 47 F.4th at 1180 (quoting *Tennessee v. Garner*, 471 U.S. 1, 7-8 (1985)). "Fourth Amendment

jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham v. Connor*, 490 U.S. 386, 396 (1989) (citing *Terry v. Ohio*, 392 U.S. 1, 22-27 (1968)).

"In determining the reasonableness of the manner in which a seizure is effected, we must balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." *Scott*, 550 U.S. at 383 (quoting *United States v. Place*, 462 U.S. 696, 703 (1983)) (internal modifications omitted). Additionally, "[t]he reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396 (citation omitted). This "allow[s] for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Plumhoff v. Rickard*, 572 U.S. 765, 775 (2014) (quoting *Graham*, 490 U.S. at 396-97). Finally, "a *de minimus* use of force cannot support a claim for excessive use of force." *Skrtich v. Thornton*, 280 F.3d 1295, 1302 (11th Cir. 2002).

"Ordinary, reasonable force does not become excessive where it aggravates, however severely, a pre-existing condition the extent of which was unknown to the officer at the time. *Sevostiyanova v. Cobb County*, 484 F. App'x 355, 360 (11th Cir. 2012) (citing *Rodriguez v. Farrell*, 280 F.3d 1341, 1352-53 (11th Cir. 2002)). In the case at hand, it is unclear which officers may have known about Plaintiff's surgically repaired neck before he yelled about it. Though the video does show that some officers were aware of the Plaintiff's prior accident which ultimately resulted in his injuries. Regardless, even considering Plaintiff's surgically repaired neck, a review of the video shows only that the officers did not use any more than a *de minimus* amount of force

and that they did only the amount necessary to handcuff the Plaintiff who kept trying to turn around to look at them.  Under the circumstances of this case, Officer Anthony's acts cannot rise to the level of a constitutional violation and qualified immunity applies.

### ii.    State Agent Immunity

Officer Anthony also asserts state agent immunity for the state law claims brought by the Plaintiff.  Specifically, Plaintiff asserts against Officer Anthony state law claims of negligence, assault, and outrage.

Ala. Code § 6-5-338 gives police officers immunity from tort liability "arising out of his or her conduct in performance of any discretionary function within the line and scope of his or her law enforcement duties." ALA. CODE § 6-5-338(a); *see also Ex parte City of Tuskegee*, 932 So. 2d 895, 903 (Ala. 2005).  But an officer can lose that immunity:

> (1) when the Constitution or laws of the United States, or the Constitution of [Alabama], or laws, rules, or regulations of [Alabama] enacted or promulgated for the purpose of regulating the activities of a governmental agency require otherwise; or
>
> (2) when the State agent acts willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law.

*Ex parte City of Homewood*, 231 So. 3d 1082 (Ala. 2017) (quoting *Ex parte Cranman*, 792 So. 2d 392, 405 (Ala. 2000)).  In sum, the test for state agent immunity follows a similar burden-shifting framework as qualified immunity.  *Hunter v. Leeds*, 941 F.3d 1265, 1283 (11th Cir. 2019).  First, the officer must show that the claims arise from a law enforcement function.  *Ex parte City of Montgomery*, 272 So. 3d 155, 161 (Ala. 2018) (citation omitted).  Then the burden shifts to the plaintiff to show one of the *Cranman* exceptions applies.

As with the prior analysis under federal law, there is no dispute that Officer Anthony was acting in a discretionary function when stopping the vehicle and ultimately arresting Plaintiff.

Therefore, the Court looks to the second part of the analysis.

### (a) Negligence – Count 5

As to the negligence claim, Alabama law is clear: "negligent or wanton conduct will not support the conclusion that a police officer has acted beyond his or her authority when he or she is exercising discretion in the discharge of his or her law-enforcement duties." *Ex parte City of Montgomery*, 272 So. 3d 155, 168 (Ala. 2018); *see also Ex parte Thomas*, 2023 Ala. LEXIS 61 at *4, 2023 WL 3668035 (Ala. May 26, 2023) (quoting same). Therefore, even taking the facts in the light most favorable to the Plaintiff, state immunity shields Officer Anthony from negligent acts.

### (b) Assault and Outrage – Counts 6 and 7

Plaintiff alleges that Officer Anthony failed to follow the proper rules of conduct established by the City about traffic stops, arrest, and use of force. An officer is not entitled to immunity from an allegation of negligence if he "fail[s] to discharge [the arrest] pursuant to detailed rules or regulations, such as those stated on a checklist." *Ex Parte Butts*, 775 So. 2d 173, 178 (Ala. 2000); *see also Howard v. City of Atmore*, 887 So. 2d 201, 208 (Ala. 2003) ("State agent acts beyond authority and is therefore not immune when he or she 'fails to discharge duties pursuant to *detailed rules or regulations, such as those stated on a checklist.*'") (emphasis in original).

Plaintiff cites to various policies from the Prichard Police Department. *See* Doc. 65 at 4-5 (citing Exhibits D–J). But, while Plaintiff cites to the fact that Officer Anthony did not review the policy manuals at issue, Plaintiff does not cite with specificity to how any of them were violated, only that Officer Anthony supposedly was in violation and should have known it. Moreover, mere "guidelines" are not enough to preclude immunity, but only "rules" that "*must* be followed by an

officer." *Ex parte Brown*, 182 So. 3d 495, 506 (Ala. 2015) (emphasis in original); *see also Collar v. Austin*, Civ. Act. No. 14-0349-WS-B, 2015 U.S. Dist. 122609, at *50, 2015 WL 5444347, at *17 (S.D. Ala. Sept. 15, 2015) (quoting *Brown*).  Therefore, when a policy leaves matters to the agent's discretion, it will not support a denial of immunity.

"The Alabama Supreme Court has largely equated qualified immunity with state agent immunity."  *Cantu*, 974 F.3d at 1236 (quotation omitted) (alteration adopted).  Thus, for the same reasons that Officer Anthony is entitled to qualified immunity on the § 1983 claim, he is also entitled to state agent immunity on the state law claims as the Court finds that the amount of force used was *de minimus* and that the traffic stop and subsequent arrest appeared appropriate. Therefore, state agent immunity applies and summary judgment is appropriate.

## B.      The City

The City also moves for summary judgment for the two federal law claims and one state law claim asserted against it.  Specifically, Count 2 (Second, Fourth, Fifth, and Fourteenth Amendment violations of unlawful search and seizure of both Plaintiff and his property), Count 4 (Fifth and Sixth Amendment violations of right to due process and right to a fair trial), and Count 5 (Negligence).  The Court will address each in turn.

### i.      Unlawful Search and Seizure of the Gun - Count 2

Under Count 2, Plaintiff states "Defendant City and Defendant Chief further violated the Plaintiff's rights under the Second Amendment, Fifth Amendment, and Fourteenth Amendment by depriving the Plaintiff of his property, a handgun and ammunition, without due process of law, by exercising control over the Plaintiff's illegally seized handgun and ammunition and refusing to return said illegally seized items until more than a year and a half after the illegal seizure."  Doc. 29 at 7, ¶ 32.

A municipality, such as the City, is not, under the *respondeat superior* doctrine, liable under § 1983 for the acts of its employees. *See Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 403 (1997) ("We have consistently refused to hold municipalities liable under a theory of respondeat superior."). "To establish municipality liability under § 1983, a plaintiff must show 'a direct causal link between a municipal policy or custom and the alleged constitutional violation.'" *Willis v. Mock*, 600 F. App'x 679, 685 (11th Cir. 2015) (quoting *City of Canton v. Harris*, 489 U.S. 378, 385 (1989)). "But 'an inquiry into a governmental entity's custom or policy is relevant only when a constitutional deprivation has occurred.'" *Id*. (quoting *Rooney v. Watson*, 101 F.3d 1378, 1381 (11th Cir. 1996)).

Here, to the extent the claim is premised on Officer Anthony's original seizure of the gun, the claim fails as the Court already found that no constitutional violation occurred. Therefore, the City also cannot be liable for the original seizure.

To the extent that Plaintiff claims that the City unlawfully retained the weapon, that claim also fails. "Even assuming the continued retention of plaintiffs' personal property is wrongful, no procedural due process violation has occurred 'if a meaningful post deprivation remedy for the loss is available.'" *Lindsey v. Storey*, 936 F.2d 554, 561 (11th Cir. 1991) (quoting *Hudson v. Palmer*, 468 U.S. 517, 533 (1984)); *see also Lakoskey v. Floro*, 2021 U.S. App. LEXIS 36592, *10, 2021 WL 5860460, *4 (11th Cir. Dec. 10, 2021) (quoting *Carcamo v. Miami-Dade County*, 375 F.3d 1104, 1106 (11th Cir. 2004) ("We've 'held that a judicial post[]deprivation cause of action satisfies due process.'").

Even by Plaintiff's own complaint and claims, he establishes the opposite of a violation of law. Specifically, he had an adequate post-deprivation remedy in that he submitted a "Weapon Return Request" on November 4, 2020 which was set for a hearing on December 3, 2020 and

ordered returned. *See* Doc. 61-8.

Therefore, this claim fails against the City and summary judgment is appropriate.

### ii.    Due Process and Right to a Fair Trial - Count 4

Plaintiff asserted Count 4 against the City along with Hobson and Chief Knight.  However, Plaintiff makes no reference to it (or Hobson at all) in his opposition to the Defendants' motion for summary judgment.  Therefore, the Court determines that Plaintiff has abandoned this claim. "In opposing a motion for summary judgment, a party may not rely on [his] pleadings to avoid judgment against [him].  There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment.  Rather, the onus is upon the parties to formulate arguments; grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned." *Edmondson v. Bd. Of Trustees*, 258 F. App'x 250, 254 (11th Cir. 2007) (citing *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995)).  Further, even on the merits, a cursory review of the allegations also shows that summary judgment would have been appropriate because the charges against Plaintiff were dismissed without a trial.  Therefore, Plaintiff cannot assert due process complaints as to the right to a fair trial.  As a result, summary judgment will be granted as to Count 4.

### iii.    Negligence - Count 5

The City seeks immunity under two separate statutes – Ala. Code § 6-5-338 and Ala. Code § 11-47-190.  The City seeks the application of immunity and summary judgment on the basis that Officer Anthony is entitled to immunity under § 6-5-338(a) as that same immunity applies to the City *via* Ala. Code § 6-5-338(b), which states: "[t]his section is intended to extend immunity only to peace officers and governmental units or agencies authorized to appoint peace officers.  No immunity is extended hereby to any private non-governmental person or entity, including any

private employer of a peace officer during that officer's off-duty hours."  In short, the City's immunity under this statute is fully tethered to the ruling as it relates to Officer Anthony. Therefore, to the extent it is granted/denied as to Officer Anthony, it is also granted/denied as to the City.  *See Borders v. City of Huntsville*, 875 So. 2d 1168, 1183 (Ala. 2003) (stating if the agent is not entitled to immunity pursuant to § 6-5-338(a), then the plain language of the statute withholds immunity from the City).

The immunity question for the City does not end there.  The City also asserts immunity under Ala. Code § 11-47-190, which states "[n]o city or town shall be liable for damages for injury done to or wrong suffered by any person or corporation, unless such injury or wrong was done or suffered through the neglect, carelessness, or unskillfulness of some agent, officer, or employee of the municipality."  In short, for any intentional actions of Officer Anthony, the City cannot be held liable.[7]

As the Court already found that Officer Anthony was entitled to state agent immunity for

---

[7] The Court acknowledges that this particular area of Alabama law gets confusing when trying to reconcile the two immunity statutes and as it relates to police officers, often results in no recourse for plaintiffs from the City under state law.  Under Alabama law, excessive force during an arrest, or assault and battery, can constitute "unskillfulness" under § 11-47-190 if it "falls below the response which a skilled or proficient officer would exercise in similar circumstances." *City of Birmingham v. Thompson*, 404 So. 2d 589, 592 (Ala. 1981); *see also Lee v. Houser*, 148 So. 3d 406, 419 (Ala. 2013) (explaining that a plaintiff may state a negligence claim against a city when an officer negligently causes or allows an assault and battery).  Complicating matters further is the holding in *Borders* where the Alabama Supreme Court held that where it was unclear whether the plaintiff's claims for "assault and battery, false imprisonment and false arrest," actually asserted "vicarious liability for an intentional tort against the City," § 11-47-190 would not immunize the City "where a plaintiff alleges a factual pattern that demonstrates neglect, carelessness, or unskillfulness." *Borders*, 875 So. 2d at 1183; *see also Brown v. City of Huntsville*, 608 F.3d 724, 743 (11th Cir. 2010) (citing *Borders* and the complications).  However, § 6-5-338 is clear that to the extent the officer is entitled to state agent immunity, so is the City.  So unless it can be established that a policy reaches the level of "detailed rules or regulations" without discretion, then a violation of a policy for which an officer is immune necessarily cannot establish vicarious liability for the City.

the negligence claims, that immunity further shields the City under § 6-5-338.  However, even if it did not, the Court would further find that under § 11-47-190, the City is still immune.  Therefore, summary judgment is appropriate as to Count 5 against the City.

## C.    Chief Knight

Plaintiff asserts three counts against Chief Knight:  Count 2 - Second, Fourth, Fifth, and Fourteenth Amendment violations of unlawful search and seizure of both Plaintiff and his property; Count 4 - Fifth and Sixth Amendment violations of right to due process and right to a fair trial; and Count 5 - Negligence.

### i.    Search and Seizure - Second, Fourth, Fifth, and Fourteenth Amendments - Count 2

As noted in Section VI(B)(i) when discussing this in the context of the City, under Count 2, Plaintiff states "Defendant City and Defendant Chief further violated the Plaintiff's rights under the Second Amendment, Fifth Amendment, and Fourteenth Amendment by depriving the Plaintiff of his property, a handgun and ammunition, without due process of law, by exercising control over the Plaintiff's illegally seized handgun and ammunition and refusing to return said illegally seized items until more than a year and a half after the illegal seizure." Doc. 29 at 7, ¶ 32.  For the same reasons this claim fails against the City, it also fails against Chief Knight.

Alternatively, the Court also finds that Chief Knight would be entitled to qualified immunity.  In his response to the summary judgment motion, the only argument Plaintiff makes as to Chief Knight states:

> Knight asks the Court for qualified immunity; however, he has offered no evidence that would indicate that he did everything a reasonable person in the same or similar position would do to ensure that his officers read and understood the Policy and Procedure book, that they would show up for court, or that they would follow the Code of Ethics and Code of Conduct as instructed. The failure to properly supervise your officers to know that they are following the policies and procedures as established by the police department is the same as if he himself was making the

illegal arrest and seizure of the Plaintiff. A Police Chief cannot just write policies and procedures and do nothing to ensure that those policies and procedures are followed. Sticking your head in the sand does not relieve you from liability.

The policies and procedures of the Police Department are the policies of the City. The City hired the chief of police, Knight, thus his actions are the actions of the City.

Doc. 65 at 7-8.  This is the sole argument he makes to dispute Chief Knight's assertion of qualified immunity.   However, Plaintiff misunderstands the burden here.   "Once it has been determined that an official was acting within the scope of his discretionary authority, ***the burden shifts to the plaintiff*** to establish that qualified immunity is inappropriate."  *Garcia*, 75 F.4th at 1185 (quotation omitted and emphasis added).  Defendants' reply aptly notes this deficiency.  Doc. 66 at 8-9.

The Eleventh Circuit has stated:

It is well established in this circuit that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates "on the basis of respondeat superior or vicarious liability." *Belcher v. City of Foley*, 30 F.3d 1390, 1396 (11th Cir.1994) (citation and quotation omitted). "Supervisory liability [under § 1983] occurs either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between actions of the supervising official and the alleged constitutional deprivation. The causal connection can be established when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so. The deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences." *Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir.1990) (citations omitted).  In addition, the causal connection may be established and supervisory liability imposed where the supervisor's improper "custom or policy … results in deliberate indifference to constitutional rights." *Rivas v. Freeman*, 940 F.2d 1491, 1495 (11th Cir.1991) (citing *Zatler v. Wainwright*, 802 F.2d 397 (11th Cir.1986)).

*Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999).  Supervisors can only be held personally liable when they (1) participate in the alleged constitutional violation, or (2) "there is a causal connection between actions of the supervising official and the alleged constitutional deprivation."

*Knight through Kerr v. Miami-Dade Cnty.*, 856 F.3d 795, 820 (11th Cir. 2017) (quotations omitted); *see also Watkins v. Session*, 2023 U.S. App. LEXIS 32282, at *11, 2023 WL 8469704 (11th Cir. Dec. 7, 2023) (citing *Knight through Kerr*, 856 F.3d at 820) ("This means that in order to support a supervisory liability claim against [the Chief of Police], [Plaintiff] was required to allege sufficient facts to plausibly indicate a causal relationship between [the Chief's] actions and his arrest by the Officers.").

There is no argument made that Chief Knight personally participated in the alleged constitutional violations. Rather, Plaintiff relies upon a theory that Chief Knight failed to properly supervise his officer by ensuring they read and understand the policy books, show up for court, and follow the codes of ethics and conduct. *See* Doc. 65 at 7-8.

But, because the officers had at least arguable probable cause to arrest the Plaintiff (seizure of the person) and to conduct a search-incident-to arrest and seize the gun (seizure of property), Plaintiff cannot demonstrate that Chief Knight was on notice of consistent constitutional deprivations by his officers and that he failed to act. Further, as to the retention of the weapon during the pendency of proceedings, Plaintiff fails to articulate how this is a constitutional violation or even that Chief Knight was aware of it. Certainly, Plaintiff does not satisfy his burden to establish qualified immunity is inappropriate.

Therefore, as discussed in the context of the claim against the City, even if the continued retention of the gun and magazine was wrongful, there was a post-deprivation remedy which Plaintiff successfully exercised. Further, Plaintiff fails to overcome the assertion of qualified immunity and summary judgment is appropriate as to this claim as to Chief Knight.

### ii.      Right to Due Process and Fair Trial - Count 4

As noted previously in Section IV(B)(ii), Plaintiff does not make any reference to Count 4

in his opposition to the summary judgment motion.  Therefore, the Court determines that Plaintiff has abandoned Count 4 against Chief Knight as to this claim and summary judgment is appropriate.

Further, the Eleventh Circuit Court has held that where a "plaintiff has failed to show a violation of due process . . . it necessarily follows that the defendants are entitled to summary judgment on qualified immunity grounds." *Hartley*, 193 F.3d at 1271 (quoting *Cottrell v. Caldwell*, 85 F. 3d 1480, 1491-92 (11th Cir. 1996)).  Therefore, qualified immunity also applies which also makes summary judgment appropriate.

### iii.    Negligence - Count 5

As to the negligence claim, in his Amended Complaint, Plaintiff merely states: "That Defendant Chief and Defendant City are liable for the actions of Defendant Anthony and Defendants Unknown Officers A, B, and C as Defendant Chief and Defendant City were aware that City of Prichard police officers were and had been conducting themselves in a manner which could injure and/or damage others."  Doc. 29 at 11, ¶ 60.

Alabama law is clear: "negligent or wanton conduct will not support the conclusion that a police officer has acted beyond his or her authority when he or she is exercising discretion in the discharge of his or her law-enforcement duties." *Ex parte City of Montgomery*, 272 So. 3d at 168. Negligent actions, by their very definition, cannot rise to the level of willfulness and maliciousness. "[P]oor judgment or wanton misconduct, an aggravated form of negligence, does not rise to the level of willfulness and maliciousness necessary to put the State agent beyond the immunity recognized in *Cranman*." *Ex parte Randall*, 971 So. 2d 652, 664 (Ala. 2007); *see also Giambrone v. Douglas*, 874 So. 2d 1046, 1057 (Ala. 2003) (holding that State-agent immunity "is not abrogated for negligent and wanton behavior; instead, immunity is withheld only upon a showing that the State agent acted willfully, maliciously, fraudulently, in bad faith, or beyond his or her

authority").

Therefore, even taking facts in the light most favorable to the Plaintiff, state immunity shields Chief Knight from allegedly negligent acts.  Plaintiff has not argued anything that is willful, malicious, fraudulent, in bad faith, or beyond Chief Knight's authority.  Rather as to Chief Knight, Plaintiff argues that "[s]ticking your head in the sand does not relieve you from liability."  Doc. 65 at 8.

Further, to the extent Plaintiff inarticulately attempts to explant his claim to failure to train or supervise personnel, the Court also finds that claim fails here.  "Alabama law is clear that the tort of negligent supervision or training requires as an element the existence of a master-servant relationship." *Ott v. City of Mobile*, 169 F. Supp. 2d 1301, 1315 (S.D. Ala. 2001). To prove negligent supervision, a plaintiff must demonstrate that the master knew, or in the exercise of ordinary care should have known, that its servant was incompetent.  *See Buckentin v. SunTrust Mortg. Corp.*, 928 F. Supp. 2d 1273, 1288 (N.D. Ala. 2013).  "[I]mplicit in the tort of negligent . . . training[] and supervision is the concept that, as a consequence of the employee's incompetence, the employee committed some sort of act, wrongdoing, or tort that caused the plaintiff's injury. *Jones Exp., Inc. v. Jackson*, 86 So. 3d 298, 305 (Ala. 2010) (citation omitted).  As the Court has found that the subordinate officers (i.e. Officer Anthony) did not commit a constitutional or state law violation, there can be no success on a negligent training or supervision claim.

Based on the above, summary judgment is also appropriate as to the negligence claim asserted against Chief Knight.

## D.    Hobson

As noted previously in Section IV(B)(ii), Plaintiff does not make any reference to Count 4 or Defendant Hobson in his opposition to the summary judgment motion.  Therefore, the Court

determines that Plaintiff has abandoned his claims against her as the City of Prichard Municipal Court Clerk and summary judgment is appropriate. Alternatively, even if Plaintiff had not abandoned the claim, under the facts presented, Hobson would immune. *See, e.g.*, *Jenkins v. Clerk of Court*, 150 F. App'x 988 (11th Cir. 2005) ("Nonjudicial officials have absolute immunity for their duties that are integrally related to the judicial process. Absolute quasi-judicial immunity for nonjudicial officials is determined by a functional analysis of their actions in relation to the judicial process.") (citations omitted); *In re Sandra Tubbs v. City of Greensboro*, 948 So.2d 540 (Ala. 2006) (holding that absolute judicial immunity extends to municipal court clerks or magistrates).

## V.    CONCLUSION

Based on the foregoing discussion and analysis, it is hereby **ORDERED** that *Defendants' Motion for Summary Judgment and Brief Memorandum in Support* (Doc. 62) is **GRANTED** and this case is **DISMISSED with prejudice**.

Final judgment will issue separately pursuant to Fed. R. Civ. P. 58.

**DONE** and **ORDERED** this the 26th day of March 2024.

 s/Terry F. Moorer
TERRY F. MOORER
UNITED STATES DISTRICT JUDGE